IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER A. HARRISON,<br><br>*Defendant*. | Case No. 3:24-CR-152-DJN |

## STATEMENT OF FACTS

The United States and the defendant, CHRISTOPHER A. HARRISON (hereafter, "the defendant" or "HARRISON"), agree that at trial, the United States would have proven the following facts, along with the allegations in the Criminal Information, beyond a reasonable doubt with admissible and credible evidence:

## INTRODUCTORY ALLEGATIONS

At all times relevant and material to this Statement of Facts:

1. The defendant, CHRISTOPHER A. HARRISON, is a real estate developer.

2. The Virginia Housing Development Authority ("VHDA") is a not-for-profit mortgage finance agency created by the Commonwealth of Virginia to help low- and moderate-income Virginians attain quality, affordable housing. VHDA is based in Richmond, Virginia, within the Eastern District of Virginia.

3. The Model Tobacco Project was a fifteen-acre collection of seven buildings in Richmond, Virginia, within the Eastern District of Virginia, centered around the Model Tobacco Building that had previously served as a factory for the United States Tobacco Company.

Sometime before October 2020, HARRISON became interested in acquiring the property and converting the buildings into an apartment complex.

4. HARRISON owned, operated, and managed various corporate entities related to his real estate development work with the Model Tobacco Project: C.A. Harrison Companies, LLC ("CAHC"), CAH Model Tobacco, LLC, and McKenzie Blake Development Company, LLC ("MBDC").

5. For MBDC, HARRISON opened, maintained, and controlled a bank account at Navy Federal Credit Union ending in 2291 ("MBDC Bank Account").

6. In or about October 2020, HARRISON sought to obtain a bridge loan from Cedar Rapids Bank & Trust ("CRBT"), which funds were to be applied towards the development and construction of the Model Tobacco Project. On or about October 27, 2020, HARRISON executed a loan agreement with CRBT, signing the agreement as the Manager of MBDC.

7. On or about October 27, 2020, as part of receiving the bridge loan, HARRISON entered into a separate disbursing agreement with CRBT, which set forth that in advance of CRBT's disbursement of loan proceeds, the Borrower (*i.e.*, HARRISON) was required to submit a signed draw request to CRBT with evidence that HARRISON had satisfied conditions of disbursement. One condition of disbursement was that HARRISON had to submit: (1) statements of costs paid to contractors; and (2) evidence that such contractors waived liens arising from the work done on the Model Tobacco Project.

8. On or about October 27, 2020, HARRISON and VHDA finalized a construction loan for the construction and development of the Model Tobacco Project. As part of this lending agreement and relationship, HARRISON was required to provide VHDA with the draw packets – including invoices and lien waivers – he submitted to CRBT for each construction draw. Further, HARRISON was required to provide VHDA with proof showing that HARRISON had paid the

invoices in question with the bridge loan proceeds he received from CRBT.

## SCHEME AND ARTIFICE TO DEFRAUD

9. The allegations contained in the preceding paragraphs are realleged and incorporated as if fully set forth herein.

10. CHRISTOPHER A. HARRISON, the defendant herein, devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

### *Purpose and Object of the Scheme*

11. The primary purpose and object of HARRISON's scheme was to: (1) generate falsified and inflated contractor invoices and lien waivers; (2) submit falsified and inflated invoices to CRBT and VHDA for loan disbursement; (3) enrich himself with inflated loan proceeds; and (4) conceal HARRISON's falsification of invoices and lien waivers from CRBT and VHDA.

### *Manner and Means of the Scheme*

12. The various ways and means through which HARRISON sought to accomplish the purpose of his scheme to defraud included the following.

A. *Inflated Invoice and Lien Waiver Submitted as Part of Third Draw to CRBT Bridge Loan*

13. On or about January 22, 2021, a construction company named Dickens Construction, based in the Eastern District of Virginia, submitted to HARRISON via e-mail two invoices in the approximate amounts of $27,152 and $1,225, seeking payment for excavation work performed on the Model Tobacco Project. Using Dickens Construction's submitted invoice as a template, HARRISON doctored an invoice to falsely reflect an inflated balance of $95,200 owed to Dickens Construction.

14. On or about January 30, 2021, HARRISON prepared a template lien release and e-mailed it to a representative of Dickens Construction, requesting signature. The template

HARRISON provided to Dickens Construction reflected that the amount owed to Dickens Construction for work performed was $35,477—the total balance owed to Dickens Construction, including, but not limited to, the amounts from the two invoices from January 22, 2021—and specified that Dickens Construction would waive any liens in the Model Tobacco Project in connection with such work. On or about February 1, 2021, a representative of Dickens Construction signed the lien release that HARRISON prepared, including obtaining a notarization on the signature page. On February 1, 2021, HARRISON thereafter asked Dickens Construction to overnight mail the lien release to HARRISON's address. Thereafter, HARRISON chopped off the notarization signature page of Dickens Construction's submittal, appending it to a doctored lien waiver that listed a contract amount of $95,200 (the same inflated amount HARRISON listed on the doctored invoice).

15. On or about February 1, 2021, HARRISON submitted and caused to be submitted the inflated invoice and lien waiver for Dickens Construction to CRBT in anticipation of receiving a portion of the third draw disbursement of the bridge loan. HARRISON also withheld the genuine Dickens Construction invoices and lien waiver from CRBT.

16. As a result of HARRISON's false submittal to CRBT, HARRISON obtained approximately $95,200 in loan disbursements for the inflated Dickens Construction invoice, which was $59,723 more than HARRISON would have received based on the work performed and invoiced by Dickens Construction.

B. *Inflated Invoice and Lien Waiver Submitted as Part of Fifth Draw to CRBT Bridge Loan*

17. On or about March 18, 2021, Dickens Construction sent HARRISON via e-mail an invoice in the approximate amount of $12,979, seeking payment for basement work performed on the Model Tobacco Project. HARRISON doctored this Dickens Construction invoice to falsely reflect an inflated balance of $119,860 owed to Dickens Construction.

4

18. On or before April 1, 2021, HARRISON prepared a template lien release and provided it to a representative of Dickens Construction, requesting signature. The template HARRISON provided to Dickens Construction reflected that the amount owed to Dickens Construction for work performed to date was $15,334—the total balance owed to Dickens Construction, including, but not limited to, the amount from the invoice from March 18, 2021—and specified that Dickens Construction would waive any liens in the Model Tobacco Project in connection with their work. On or about April 1, 2021, a representative of Dickens Construction signed the lien release that HARRISON prepared, including obtaining a notarization on the signature page, emailing the document to HARRISON on April 2, 2021. Thereafter, HARRISON chopped off the notarization signature page of Dickens Construction's submittal, appending it to a doctored lien waiver that listed a contract amount of $119,860 (the same inflated amount HARRISON listed on the doctored invoice).

19. On or about April 7, 2021, HARRISON submitted and caused to be submitted the inflated invoice and lien waiver for Dickens Construction to CRBT in anticipation of receiving a portion of the fifth draw disbursement of the bridge loan. HARRISON also withheld the genuine Dickens Construction invoice and lien waiver from CRBT.

20. As a result of HARRISON's false submittal to CRBT, HARRISON obtained approximately $119,860 in loan disbursements for the inflated Dickens Construction invoice, which was $104,526 more than HARRISON would have received based on the work performed by and invoiced by Dickens Construction.

C. *Submitting False Invoices to VHDA*

21. HARRISON submitted the invoices and lien releases previously submitted to CRBT to VHDA (including falsified documents in the name of Dickens Construction). VHDA required additional supporting documentation to show that certain vendors had been paid.

5

HARRISON concealed his fraudulent and inflated invoices by manufacturing fictitious payments to Dickens Construction.

22. For instance, to conceal that he had submitted a fraudulent and inflated invoice for Dickens Construction in the approximate of $95,200 to CRBT as part of the third CRBT loan draw for the Model Tobacco Project, HARRISON took out a cashier's check in the approximate amount of $95,200 on or about February 8, 2021 addressed to Dickens Construction. On or about April 12, 2021, HARRISON submitted an image of this check to VHDA, purporting that Dickens Construction had been paid this inflated amount. However, HARRISON did not pay Dickens Construction this $95,200. Rather, on or about the same day HARRISON took out this cashier's check, after he scanned the check for submittal to VHDA, HARRISON redeposited the check into his own account.

23. Additionally, to conceal that he had submitted a fraudulent and inflated invoice for Dickens Construction in the approximate amount of $119,860 to CRBT as part of the fifth CRBT loan draw request for the Model Tobacco Project, HARRISON took out a cashier's check in the approximate amount of $119,860 on or about April 9, 2021, addressed to Dickens Construction. On or about May 3, 2021, HARRISON submitted an image of this check to VHDA, purporting that Dickens Construction had been paid this amount. However, HARRISON did not pay Dickens Construction this $119,860. Rather, on or about the same day HARRISON took out this cashier's check, after he scanned the check for submittal to VHDA, HARRISON redeposited it into his own account.

## COUNT ONE
(Wire Fraud)

24. The allegations contained in the preceding paragraphs, including subparagraphs, are realleged and incorporated as if fully set forth herein.

25. On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purposes of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, defendant CHRISTOPHER A. HARRISON knowingly caused to be transmitted by means of wire communication in interstate commerce, the writings, signs, signals, pictures, and sounds described below:

| Count | Date of Wire Transmission (on or about) | Description of Wire Transmission |
|---|---|---|
| 1 | February 3, 2021 | As a result of HARRISON generating fabricated invoices in the name of Dickens Construction and because HARRISON submitted these fraudulent documents to Cedar Rapids Bank & Trust Company in Cedar Rapids, Iowa in connection with the Model Tobacco Project, HARRISON obtained approximately $95,200 for payments to Dickens Construction, when in fact HARRISON had only been invoiced by Dickens Construction for $35,477 at the time. Specifically, on or about February 3, 2021, CRBT disbursed a portion of these loan proceeds to HARRISON's MBDC Bank Account at Navy Federal Credit Union ending in 2291 (with servers in the Eastern District of Virginia), causing an interstate wire transmission to be initiated from outside of Virginia into the Eastern District of Virginia. |

26. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

27. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Erik S. Siebert
United States Attorney

Date: 1/28/2025

By: _____
Kashan K. Pathan
Avi Panth
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, CHRISTOPHER A. HARRISON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

                                                  _____
                                                  CHRISTOPHER A. HARRISON

I am Robert Cary, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

                                                  _____
                                                  Robert Cary, Esq.
                                                  Attorney for CHRISTOPHER A. HARRISON

I am Krystal Durham, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

                                                  _____
                                                  Krystal Durham, Esq.
                                                Attorney for CHRISTOPHER A. HARRISON

I am Ashwin Shandilya, defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Ashwin Shandilya, Esq.
Attorney for CHRISTOPHER A. HARRISON